## Musser *versus* Oliver.

1. Administrators in making distribution amongst heirs should take *refunding bonds*, otherwise they may be liable to creditors whose claims do not then appear.

2. A ward, a few weeks after arriving at full age, executed a receipt in full to her guardian who had not settled any guardianship account. Above two years afterwards the guardian died, and the administrators, relying on the receipt, several years afterwards made distribution among the widow and heirs. Soon after, on petition, an account of the ward's estate was directed to be made by the administrators, and a balance was decreed in favor of the ward: *Held*, that though more than six years had elapsed from the death of the decedent before the petition was presented, and though distribution had been made, the administrators not having taken refunding bonds were held to be personally liable for the balance due the wards, they having had an amount of assets sufficient to pay the same.

3. The verbal declaration of the ward after arriving at full age, that she had received all that was due to her by her guardian, on the faith of which declaration, together with her receipt to the guardian, the administrators made distribution, will not estop her from claiming from the administrators the amount finally decreed to her, they having made distribution of the assets without having taken refunding bonds.

ERROR to the Common Pleas of *Cumberland county.*

This was an action on the administration bond of George and Jacob Moltz, administrators of the estate of Jacob Moltz, deceased, and was brought in the name of the Commonwealth of Pennsylvania, for the use of John S. Oliver and Barbara his wife, against John N. Musser, administrator *de bonis non* of George Rupley,

[Musser *v.* Oliver.]

deceased, a co-obligor and surety in the said administration bond. The plea was "Performance of the conditions of the bond," &c.

A verdict was rendered under the direction of the Court, for the plaintiff for $2885.61.

Jacob Moltz, the father of George and Jacob Moltz, on the 10th December, 1822, was appointed guardian of Barbara Mann, and acted as such until she came of age on 12th May, 1835. On 8th June, 1835, a settlement was made between her and her guardian, and she gave him a receipt in full, including $50 for services rendered as guardian. During this time, and until the proceedings in the Orphans' Court were commenced against the administrators of her guardian, Barbara Mann lived with her mother and brothers and sisters in the neighborhood of Jacob Moltz, and of his administrators. On the 12th February, 1838, Jacob Moltz died, and his two sons before named became the administrators of his estate, and gave the bond on which this suit was brought. These administrators settled their first administration account the 29th January, 1839, and their final account 29th August, 1843, and, it was alleged on their part, distributed and paid the balance in their hands amongst the widow and heirs of Jacob Moltz, deceased.

On the 8th April, 1844, John S. Oliver, who had married Barbara Mann in 1842, presented a petition to the Orphans' Court of Cumberland county, praying for a citation to Jacob Moltz's administrators to settle an account of their intestate *as guardian* of his wife. This petition was in the ordinary form to settle an account. Upon it the Court awarded a citation, to which the said administrators made answer UNDER OATH that Jacob Moltz died more than six years before; that the respondents had settled a final administration account of his estate a year before, and that the moneys of said estate had been distributed amongst the widow and heirs of their intestate; that they believed that the accounts of their intestate with said Barbara had been settled and paid in full; that the papers of Jacob Moltz at the time of his death and since have been in confusion, and that it was supposed that many of them were lost or destroyed; that among said papers still in their possession was one of which the following is a copy—the same being in the handwriting of John Black, Esq.

"East Pennsborough Township.

• "*Cumberland county*, ss.

"Received of Jacob Moltz, my guardian, the sum of $728.10 in full, including $50 for services rendered as guardian. Witness my hand 8th June, 1835.                               her

BARBARA ⋈ MANN."

Witness present—MARY ANN MANN.                    mark.

[Musser *v.* Oliver.]

It was alleged that the respondents believed this to be a final settlement between the said Barbara and her guardian. They were also informed, in the year 1839, by John Oldwine that he had had a conversation with Barbara Mann in reference to her having been paid in full by Jacob Moltz, her guardian, and that she had told him she had got all that was coming to her. That finding the above receipt of 8th June, 1835, amongst the papers of their deceased father, and being informed by Oldwine as before stated in 1839, and having advertised their notice to creditors as required by law, and not hearing of a claim by Barbara Mann or any person for her, and having paid as they believed all the debts of their intestate, they paid the balance in their hands to their mother and heirs of their father, *without taking refunding bonds.*

It was added: The proceedings on this application were dismissed by the Orphans' Court. An appeal was taken to the Supreme Court, who reviewed the decree of the Court below and ordered an account to be stated by the administrators of Jacob Moltz as guardian aforesaid, but the effect of that account upon their personal liability was not decided. Auditors were appointed by the Orphans' Court, who reported an account which was confirmed 12th December, 1845, finding a balance due by the guardian of $1972.19. A suit brought shortly after on the administration bond against the administrators, was decided against the plaintiff below, was carried to the Supreme Court, and the judgment affirmed. See 10 *Barr* 527. Suits were brought severally against the administrators and their sureties on the administration bond, one of which is the present case.

No points were submitted to the Court on the trial of this cause, but the following evidence was offered and rejected in part:

Defendant offers to prove that Barbara Mann became of age 12th May, 1835, prior to her receipt in full to her guardian; that Jacob Moltz the guardian died 23d February, 1838; that letters of administration on his estate were issued to his sons, George and Jacob Moltz, who thereupon published a notice to creditors as required by law; that the said Barbara resided with her mother and brothers and sisters in the immediate neighborhood of the administrators, and her deceased guardian; *that after the death of Jacob Moltz the said Barbara declared that she had settled with her guardian, and that he had paid her in full, which declarations were communicated to the said administrators before they distributed the estate to the widow and heirs of Jacob Moltz, deceased,* which they did *without taking from them refunding bonds;* the receipts for which payments are also offered in evidence.

The above offer was objected to except the part relating to the communication made by Barbara, which was communicated to the administrators. As to this the plaintiff does not object, because

the witness who will prove it testified on a former trial that the declaration was communicated to the administrators *after* the claim of Oliver and wife was made upon them.

All the rest was objected to on the ground that it was immaterial to the issue and could produce no legal result against the plaintiff's cause of action. All that part of the offer which was objected to was rejected.

In the counter statement it was alleged that no guardianship account was settled by Jacob Moltz. That the ward at the time of giving the receipt could neither write nor read. That after the petition of Oliver in 1844, the subject of account was referred to auditors who reported in 1844, that after crediting the $728.10 paid to the ward, a balance of $1780.20 was due by the guardian. The Court set aside the report on the ground that the recovery was barred *by time*. This decision was reversed. It was again referred to auditors who reported a larger balance. The report was confirmed. In 1849 the representatives of Moltz petitioned the Orphans' Court for a re-examination of the account, on the ground of alleged mistakes, but decree was made against the administrators. The administrators were fixed with a *devastavit*, in accordance with the intimation in 10 *Barr* 533; after which this action on the official bond was brought.

Charge of FISHER, J.—Nothing has been given in evidence to preclude the plaintiffs from recovering the whole amount of their demand. Your verdict will therefore be in favor of plaintiffs for $1972.19, with interest from the 10th of December, 1845.

Error was assigned, 1. In rejecting the evidence offered. 2. In taking the case from the jury, quoting the charge as above.

See the report of the case of Commonwealth *v.* Moltz, in 10 *Barr* 527–533.

*Gallagher* and *Biddle*, with whom was *Hepburn*, for the plaintiff in error.—It was contended that at the time of the issuing of the citation against Moltz, the claim of plaintiffs was barred by the statute, the ward having been of age nearly nine years, and above six years having elapsed since the death of the guardian : 2 *Watts* 209; 6 *Watts* 381; 1 *Pa. Rep.* 282; 2 *Watts* 295; 4 *Ser. & R.* 557.

It was further contended that the plaintiffs were *estopped* : 3 *Ser. & R.* 283; 10 *Id.* 144; 13 *Id.* 304; 7 *Watts* 168; 1 *Greenleaf Ev.* sec. 207 ; *Id.* 387–9. The estate of Moltz had been settled before the citation issued.

It was contended that the fact that *refunding bonds* had not been taken by the administrators should not prejudice them, as

[Musser *v.* Oliver.]

they had evidence of the payment of the settlement between the ward and guardian: 4 *Vesey* 825; *Id.* 833. Though the decree of the Orphans' Court as to the guardianship account is conclusive on that subject, it did not charge any *personal* liability on the administrators: 17 *Ser. & R.* 354.

*Watts* and *Miller*, with whom was *Parker*, for defendants in error.—When the case between these parties was up at May Term, 1845, it was decided that the receipt was not conclusive against the ward, and that there was no evidence of supineness on the part of her or her husband, after discovering the mismanagement of the guardian. Reference was made to 2 *Watts* 494; 5 *Watts* 90; 4 *Ser. & R.* 115.

It was said that the plaintiffs were not estopped was decided in the case reported in 10 *Barr* 532–3.

The opinion of the Court, filed July 25, 1853, was delivered by

Knox, J.—The decree of the Orphans' Court is conclusive against the estate of Jacob Moltz. The question to be determined in this case is as to the personal liability of his administrators to pay the money found by the decree to be due to Oliver and wife.

The general rule is, that where administrators have assets in their hands sufficient to pay the debts of the decedent, they are personally responsible for the faithful application of such assets.

It is admitted that the sum distributed to the heirs of Jacob Moltz by the administrators, was greater than the amount decreed to be paid to Oliver and wife, and claimed in this suit, but it is alleged that such distribution is a defence to this claim, because it was made more than five years after the death of the intestate, upon the faith that he had fully accounted as guardian of Barbara, one of the plaintiffs. Relying upon the receipt in their possession, given in 1835, and the declaration made by Barbara to John Oldwine, and by him communicated before the distribution, that "she had got all that was coming to her," the administrators divided the fund amongst themselves and their co-heirs, without taking refunding bonds.

The 4th section of the Act of 24th February, 1834, provides that, "before any person shall be entitled to receive any share as a distributee, he shall give sufficient real or personal security to be approved by the Orphans' Court, in such sum and form as the Court shall direct, with condition that if any debt or demand shall afterwards be recovered against the estate of the decedent, or otherwise be duly made to appear, he will refund the rateable part of such debt or demand, and of the costs and charges attending the recovery of the same."

Had there been a compliance with this plain requisition of the

[Musser v. Oliver.]

law, there could have been no pretence against the right of the plaintiffs to enforce payment of their debt.

The heirs of Jacob Moltz had no right to the money, to the exclusion of his creditors, and the neglect of the personal representatives to perform a plain duty imposed by the statute, certainly should not be permitted to defeat the recovery of an adjudicated claim. The object of the statute in requiring refunding bonds, was to protect claims that might arise through mistaken or fraudulent settlements, as well as such that had not yet come to light.

The only safe line of conduct for executors or administrators to follow is, to obey all the requisitions of the law. Governed by its directions, they will be protected by its shield. Disobeying its mandates, they must suffer its penalties.

It would be entirely unsafe, as a precedent, to hold that the written or verbal declaration of a party, that his debt was paid, would place him without the saving clause of this most beneficial statutory provision. This doctrine would punish a mistaken admission for the purpose of protecting a violation of legal duty.

The lapse of time from the date of the receipt, in 1835, to the commencement of proceedings against the administrators, in 1844, was held by our predecessors to be no bar to a recovery against the administrators, and in our opinion it forms no defence in the present suit.

The evidence was sufficient to fix the administrators with a *devastavit*, and the Court below were right in excluding the defendant's offer, and directing a verdict for the plaintiff.

Judgment affirmed.